UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:14-CV-213-CRS

ZELTIQ AESTHETICS, INC.  PLAINTIFF

v.

MEDSHARE, INC., *et al.*  DEFENDANTS

**MEMORANDUM OPINION**

Zeltiq Aesthetics, Inc. ("Zeltiq") sued Medshare, Inc. ("Medshare") and several of its employees for trademark infringement, false advertising, and unfair competition under the Lanham Act. Medshare responded with five counterclaims. Zeltiq now argues that the counterclaims are meritless and moves to dismiss all of them. For the reasons that follow, the Court agrees and will grant the motion in its entirety.

I.

Medshare operates a health and wellness center in Louisville, Kentucky. (DN 49, PageID # 536 ¶ 11.) According to the counterclaim, Zeltiq markets and distributes what it calls "coolsculpting" devices to health and wellness centers. (*Id.* at ¶ 12.) It also claims to be the exclusive licensee of a patented technology known as "Cryolipolysis," a "technique" that cools targeted areas on the body to break down and ultimately eliminate the underlying fatty tissue through the body's waste-elimination processes. (*Id.* at PageID # 536 ¶ 12-13.) According to Medshare, that technology has been utilized by many entities for decades. (*Id.* at ¶ 14.)

The counterclaim alleges that, "[i]n the latter part of 2013," a representative for Zeltiq named Angela Betner "communicated with Medshare personnel through both e-mails and by personal, face to face visits at Medshare's facility to promote and market the use of Zeltiq's

coolsculpting machines and services." (*Id.* at ¶ 15.) Moreover, it alleges that "Zeltiq did deliver a substantial amount of marketing material to Medshare and induced Medshare to begin advertising Zeltiq's products and services to Medshare's clients." (*Id.* at ¶ 16.) Next, it claims that "Zeltiq further promised to provide financing to Medshare to purchase the coolsculpting machine, it promised to provide training to Medshare's staff on the use of the coolsculpting machine, and further promised to deliver a coolsculpting machine to Medshare in time for Medshare to be able to begin applying treatments to the clients it had booked." (*Id.* at ¶ 17.) The counterclaim's facts section concludes: "Despite its promises and after inducing Medshare to expend substantial resources to promote and advertise the arrival of Zeltiq's coolsculpting machine and the services it provides, Zeltiq failed to deliver the coolsculpting machine to Medshare and it failed to provide the financing to enable Medshare to purchase the machine." (*Id.* at PageID # 537-38 ¶ 18.)

Based on these allegations, Medshare alleges: (1) breach of contract; (2) tortious interference and/or abuse of process; (3) fraud; (4) fraudulent inducement; and (5) punitive damages. Zeltiq moved to dismiss all claims. The Court will consider each in turn.

II.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as

2

true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Id.* at 488 (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

The Court first considers Medshare's breach of contract claim. Generally, a breach of contract claim under Kentucky law requires: (1) a valid and enforceable contract; (2) a breach of that contract; and (3) damages caused by that breach. *Ward v. Daugherty*, 14 S.W.2d 1089, 1089 (Ky. 1929). Unless the statute of frauds applies, a contract may be written or oral. *See Israel's Admr'r v. Rice*, 174 S.W.2d 517, 518-19 (Ky. 1943). Of course, "[n]ot every agreement or understanding rises to the level of a legally enforceable contract." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997). Rather, a valid contract requires (1) offer and acceptance, (2) full and complete terms, and (3) consideration. *Coleman v. Bee Line Courier Serv., Inc.*, 284 S.W.3d 123, 125 (Ky. 2009). To satisfy the second element, "the terms of a contract must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of breach." *Kovacs*, 957 S.W.2d at 254. And to satisfy the third, the general rule is that "[m]utuality of obligations is an essential element of a contract, and if one party is not bound, neither is bound." *Id.* (citing *Morgan v. Morgan*, 218 S.W.2d 410 (Ky. 1949)).

While incorporating the facts described in Part I above, the counterclaim asserts the following to establish the breach of contract claim:

> 20. Zeltiq's promises to Medshare were to (1) provide financing for the purchase of a coolsculpt machine and (2) deliver for Medshare's use at its facility

3

> a coolsculpt machine to administer the procedures set forth in the marketing materials Zeltiq provided to Medshare which constitutes a contract.
>
> 21.   Zeltiq's failure to provide the requisite financing to Medshare and to deliver the coolsculpt machine to Mesdhare constitutes a breach of Zeltiq's contractual obligations.
>
> 22.   As a result of Zeltiq's breach, Medshare has suffered damages in an amount to be proved at trial.

(DN 49, PageID # 538 ¶¶ 20-22.)

This pleading is deficient under both Kentucky law and the federal pleading standards. It says that Zeltiq promised to provide financing and to deliver a coolsculpt machine. Was this an offer? If it was, what were the terms of the financing? Of the machine delivery? If it was an offer and if it did contain full and complete terms, did Medshare accept? And if Medshare did accept, did it provide any consideration? The counterclaim does not allege a writing; but is this a transaction for the sale of goods in excess of $500 which would require a writing under Kentucky's statute of frauds, KRS 355.2-201? Medshare's pleading fails to answer any of these questions; in fact, it fails to establish a single element of a valid and enforceable contract under Kentucky law. As such, it fails to establish a plausible breach of contract claim and falls well short of the *Twombly* and *Iqbal* pleading requirements. It will be dismissed.

### IV.

Next, the Court considers Medshare's claims for "tortious interference and/or abuse of process." Medshare's only response to Zeltiq's motion to dismiss this claim is that it "believe[s] that the facts as alleged in the Counterclaim, and facts revealed through discovery, will prove the tortious interference/abuse of process claims as sought in Count II." In total, the "facts" asserted in the counterclaim used to establish these claims are:

> 24.   Zeltiq has continually sought to interrupt the business activities of Medshare by filing false allegations in complaints in Court.

4

>	25.	Zeltiq has engaged in a pattern of conduct that includes interfering with the employees, officers and/or directors of Medshare by naming them as defendants in this lawsuit for acts and/or omissions performed in the course of their employment, for no other purpose than to intimidate those individuals and interrupt Medshare's business.
>
>	26.	Through its counsel, Zeltiq has delivered threatening communications to unaffiliated, nonparty businesses, using the instant lawsuit as a sword to intimidate other users of Cryolipolysis technologies into submitting to Zeltiq's demand to cease competition in the marketplace.
>
>	27.	Zeltiq's actions constitute tortious interference with business relationships and as a result, Medshare and its employees have suffered injuries in an amount to be proved at trial.

(DN 49, PageID # 538-39.) Though Medshare's counterclaim combined the two claims, the Court will treat them separately.

A.

Under Kentucky law, the tort of intentional interference with business relations arises when one improperly interferes with future or existing contractual relations. *See Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988). It is not entirely clear from Medshare's pleading whether it accuses Zeltiq of interfering with its existing contractual relations or its future contractual relations. The Court will address both.

To establish a claim for intentional interference with an existing contract, Medshare must prove that Zeltiq "intentionally and improperly interfere[d] with the performance of a contract . . . between [Medshare] and a third person by inducing or otherwise causing the third person not to perform the contract . . . ." *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533 (Ky. App. 2005) (quoting Restatement (Second) of Torts § 766 (1979)). Here, Medshare's counterclaim does not identify a single contract (or even a relationship with a third

party) with which Zeltiq interfered. Without that, Medshare cannot assert a plausible claim for tortious interference with a contract. The claim will be dismissed.

To establish a claim for intentional interference with a prospective contractual relation, Medshare must prove that Zeltiq "intentionally and improperly interfere[d] with [Medshare]'s prospective contractual relation . . ., whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing [Medshare] from acquiring or continuing the prospective relation." *Id.* (quoting Restatemetn (Second) of Torts § 766B (1979)). Here, the closest that Medshare gets to identifying a prospective contractual relation is its claim that Zeltiq's attorney "delivered threatening communications to unaffiliated, nonparty businesses, using the instant lawsuit as a sword to intimidate other users of Cryolipolysis technologies into submitting to Zeltiq's demand to cease competition in the marketplace." (DN 49, PageID # 529 ¶ 26.) Yet even this fails to allege a prospective contractual relation, since it only refers to communications made to unidentified "unaffiliated, nonparty businesses." This claim will also be dismissed.

B.

Having found that Medshare's tortious interference claims fail, the Court next considers the abuse of process claim. Kentucky law defines "an abuse of process claim as the improper 'use of a legal process, whether civil or criminal, against another primarily to accomplish a purpose for which that process is not designed.'" *Garcia v. Whitaker*, 400 S.W.3d 270, 275 (Ky. 2013) (quoting *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1988)). "The essential elements of an action for abuse of process are (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson*, 962 S.W.2d at 395 (citing *Bonnie Braes Farms Inc. v. Robinson*, 598 S.W.2d 765 (Ky. App. 1980)). "Some definite

6

act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required . . . ." *Id.* As such, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Id.* at 394-95.

Here, the abuse of process claim is entirely premised on Zeltiq's lawsuit against Medshare and its employees. In the counterclaim, Medshare says that "Zeltiq has continually sought to interrupt the business activities of Medshare by filing false allegations in complaints in Court." (DN 49, PageID # 538 ¶ 24.) Additionally, it alleges that "Zeltiq has engaged in a pattern of conduct that includes interfering with the employees, officers and/or directors of Medshare by naming them as defendants in this lawsuit for acts and/or omissions performed in the course of their employment, for no other purpose than to intimidate those individuals and interrupt Medshare's business." (*Id.* at PageID # 538-39 ¶ 25.)

Medshare's counterclaim fails to satisfy the second element of an abuse of process claim—it does not establish that Zeltiq performed a willful act not proper in the regular course of proceeding. Even assuming Zeltiq's pending claims for trademark infringement, false advertising, and unfair competition are completely without merit (and they are still pending), "Kentucky courts have declined to find that a plaintiff has stated a claim for abuse of process where the defendant has done nothing more than file a lawsuit that lacked any legal basis for the purpose of retaliation." *Kinslow v. Fifth Third Bank, Inc.*, 529 F. App'x 467, 473 (6th Cir. 2013) (citing *Sprint Commc'ns*, 307 S.W.3d at 119; *Deters v. Taliaferro*, No. 2009-CA-1344-MR, 2010 WL 3719917, at *2 (Ky. App. Sept. 17, 2010)). Moreover, the Kentucky Supreme Court has "strongly suggested" that "filing an action and serving process" cannot satisfy the second element of an abuse of process claim. *Kinslow*, 529 F. App'x at 473 (citing *Simpson*, 962

7

S.W.2d at 394-95; *Sprint Commc'ns*, 307 S.W.3d at 114, 119). Medshare has only alleged that Zeltiq filed the initial lawsuit to disrupt Medshare's business and intimidate its employees. Even if this were true, the claim fails. Medshare's conclusory allegation that the claims against it are meritless cannot support the second element of its abuse of process claim. If it could, every business faced with what it believed to be a meritless suit could assert an abuse of process counterclaim. But that is not the law in Kentucky. This claim will be dismissed.

V.

The Court next reviews Medshare's claims for fraud and fraudulent inducement. Federal Rule of Civil Procedure 9 requires that a party alleging fraud "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). In other words, the pleading "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quotations omitted). This rule is designed to "alert defendants as to the particulars of their alleged misconduct so that they may respond," and also "to prevent 'fishing expeditions,' to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quotations and citations omitted).

Count III of Medshare's counterclaim, labeled "Fraud," incorporates the prior facts in the counterclaim before stating:

> 29. Zeltiq's representations that it would provide financing to Medshare, deliver a coolsculpt machine to Medshare's facility and train Medshare's staff on the use of the coolsculpt machine in time for Medshare to begin treating its patients were false when Zeltiq's representatives made them.
>
> 30. Medshare relied on Zeltiq's representations by promoting and advertising Zeltiq's products and marketing materials and by enticing its patients to make appointments for the coolsculpt treatments.
>
> 31. Zeltiq knew that Medshare had relied on Zeltiq's representations.
>
> 32. As a result of Medshare's reliance on Zeltiq's false representations, Medshare has been damaged in an amount to be proved at trial.

(DN 49, PageID # 539.)  Count IV, labeled "Fraudulent Inducement," is nearly identical.

These four paragraphs fall well short of the Rule 9(b) pleading requirements. While the counterclaim identifies the general nature of the statements that Medshare claims were fraudulent, it fails every other element. Who made the statements? Where did he or she make them? When? And why were these statements fraudulent? Also, how was Medshare injured by the statements? To answer these questions, Medshare merely relies on legal conclusions and recitations of the elements of recovery that would fail *Twombly* and *Iqbal*. They fall well short of the heightened pleading requirements of Rule 9. Both claims will be dismissed.

In its response brief, before it could finish explaining why its fraud and fraudulent inducement claims should proceed, Medshare abruptly asks the Court for leave to amend its complaint because its "fraud and fraudulent inducement claims are more along the lines of a claim for misrepresentation rather than fraud or fraudulent inducement." (DN 57, PageID # 590.) Medshare adds no new facts, arguing that the "facts as alleged in support of fraud and fraudulent inducement suffice to support a claim of misrepresentation." (*Id.* at PageID # 591.) For starters, this is not a proper avenue for amending the counterclaim. *See Stanley Warranty, LLC v. Universal Adm'rs, Inc.*, No. 3:13-cv-513-JGH, 2014 WL 4805669 at *6 n.5 (W.D. Ky.

Sept. 26, 2014). In addition, amendment would be futile because "Kentucky courts have recognized that intentional misrepresentation and fraud have the same meaning under Kentucky common law." *Minger v. Green*, 239 F.3d 793, 800 n.3 (6th Cir. 2001). For both of these reasons, this request will be denied.

VI.

That leaves the punitive damages claim. "[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012). Medshare has no remaining causes of action, so the punitive damages claim must also be dismissed.

A separate Order will be entered consistent with this Memorandum Opinion.

May 27, 2015

Charles R. Simpson III, Senior Judge
United States District Court

cc: Counsel of Record

10